UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIRIAM HERNANDEZ,<br>    Plaintiff,<br><br>v.<br><br>PALISADES COLLECTION LLC,<br>    Defendant. | LEAD CASE NO.<br>3:06cv1382 (SRU)[1] |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT and MOTION FOR JUDGMENT ON THE PLEADINGS

This Fair Debt Collection Practices Act ("FDCPA") and Connecticut Unfair Trade Practices Act ("CUTPA") case arises out of the initiation of lawsuits in Connecticut Superior Court by the defendant Palisades Collection LLC ("Palisades") against the plaintiffs in order to collect on purchased defaulted debts. The plaintiffs contend they are entitled to summary judgment because, as a licensed "consumer collection agency" under Connecticut law, Palisades is prohibited from filing lawsuits to collect on defaulted debts and, therefore, by filing suits against the plaintiffs, Palisades violated the Consumer Collection Agency Act ("CCAA"), and in turn, the FDCPA and CUTPA. Denying that it is a "consumer collection agency," Palisades has filed its own cross-motion for summary judgment. Palisades contends that it was acting as a

---

[1] The member cases in this consolidated action are: *Baldwin v. Palisades Collection LLC*, 3:06cv1384(SRU); *Campbell v. Palisades Collection LLC*, 3:06cv1385(SRU); *Belanger v. Palisades Collection LLC*, 3:06cv1386(SRU); *Daniels v. Palisades Collection LLC*, 3:06cv1387(SRU); *Miller v. Palisades Collection LLC*, 3:06cv1388(SRU); *Hylton v. Palisades Collection LLC*, 3:06cv1547(SRU); *Garofano v. Palisades Collection LLC*, 3:06cv1894(SRU); *Shuster v. Palisades Collection LLC*, 3:06cv2011(SRU); *Robinson v. Palisades Collection LLC*, 3:06cv2012(SRU); *Griffiths v. Palisades Collection LLC*, 3:07cv223(SRU); *Aduhene v. Palisades Collection LLC*, 3:07cv261(SRU); *Connelly v. Palisades Collection LLC*, 3:07cv788(SRU); *Garrison v. Palisades Collection LLC*, 3:07cv789(SRU); *Lucas v. Palisades Collection LLC*, 3:07cv790(SRU); *Causey v. Palisades Collection LLC*, 3:07cv256(SRU); *Casman v. Palisades Collection LLC*, 3:07cv996(SRU).

"creditor" when it filed suit against the plaintiffs and, therefore, it was not covered by the restrictions of the CCAA and could not have violated the FDCPA or CUTPA as a matter of law. In addition, Palisades has filed a motion for judgment on the pleadings, arguing that the plaintiffs' complaint does not state a claim, that several plaintiffs' FDCPA claims are time-barred, and that the *Rooker-Feldman* doctrine eliminates federal subject matter jurisdiction over several of the plaintiffs' actions.

The issue that I must resolve is whether Palisades, despite having been licensed as a collection agency in the state of Connecticut at some point during the pendency of the state court suits, should nevertheless be treated as a creditor for purposes of this case where it was seeking to collect on the debts on its own behalf. For reasons discussed more thoroughly below, I conclude that Palisades was a not a "consumer collection agency," as defined by Connecticut law, because it was seeking to collect debt on its own behalf and, therefore, the plaintiffs' claims fail as a matter of law.

## I. Background

The following facts are undisputed. Plaintiffs are individuals who reside in Connecticut. Palisades purchased from the original creditors all right and interest in accounts owed by each of the plaintiffs ("the accounts"). Palisades owes no fiduciary obligations to the original creditors and has no right of recourse against the original creditors if it is unable to collect against the defaulted accounts. Palisades retained the services of two law firms that assigned Connecticut-licensed attorneys to commence suits – with Palisades as the named plaintiff and the plaintiffs in this action as the defendants – in Connecticut Superior Court to collect on the accounts.

In the meantime, Palisades sought and obtained two licenses for its Bethlehem,

Pennsylvania office and its Englewood Cliffs, New Jersey office, to engage in business as a collection agency in the State of Connecticut, effective December 22, 2005 and February 7, 2006, respectively. Each license had an expiration date of September 30, 2007. Palisades subsequently withdrew those consumer collection agency licenses, effective August 29, 2006.

The seventeen individual plaintiffs' instant suits against Palisades were consolidated on May 29, 2007. A hearing on the pending motions was held on August 20, 2008.

## II. Discussion

### A. *Rooker-Feldman* Doctrine

Palisades has contested federal subject matter jurisdiction for some of the plaintiffs' complaints on the basis of the *Rooker-Feldman* doctrine because final judgments have entered in several of Palisades' suits against the plaintiffs in state court.

The *Rooker-Feldman* doctrine effectively bars federal courts from reviewing state court judgments by stripping federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine, however, only applies "to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Second Circuit has identified a four-part test to determine when the *Rooker-Feldman* doctrine is applicable: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must be complaining about injuries caused by the state court judgment; (3) the plaintiff must be inviting the district court to review and reject that judgment; and (4) the state court judgment

must have been rendered prior to the time the plaintiff commenced his or her federal suit. *Hoblock*, 422 F.3d at 85.

I conclude that the *Rooker-Feldman* doctrine does not bar federal court jurisdiction over plaintiffs' claims. The plaintiffs are not complaining of an injury caused by a state court *judgment*, but rather are alleging injuries that arise out of the *commencement* of the state court suits. Specifically, the plaintiffs contend that Palisades violated the CCAA, and in turn the FDCPA and CUTPA, when it *filed* the state court suits in an effort to collect on outstanding debts, while maintaining a license as a collection agency. The plaintiffs are neither (a) complaining of an injury that arises out of a state court judgment, nor (b) asking this court to review and reject the state court judgments. Therefore, I have subject matter jurisdiction to consider the merits of the plaintiffs' claims against Palisades.

B. <u>Motions for Summary Judgment</u>

1. *Standard of Review*

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

    2.    *FDCPA Claim*

At the August 20, 2008 motion hearing, the plaintiffs conceded that their FDCPA claim was predicated solely on Palisades' alleged violation of the CCAA, Conn. Gen. Stat. § 36a-800 *et seq*. Specifically, the plaintiffs contend that, as a licensed consumer collection agency, Palisades was bound by the CCAA, which states that "[n]o consumer collection agency shall . . . purchase or receive assignments of claims for the purpose of collection or institute suit thereon in any court." Conn. Gen. Stat. § 36a-805(a)(3). The plaintiffs contend that, by instituting lawsuits against the plaintiffs in state court with the purpose of collecting on the debt, Palisades violated the CCAA; it is that alleged violation that serves as the basis for the plaintiffs' FDCPA claims. Palisades counters that it should be considered a "creditor" because it was collecting on the accounts on its own behalf, not on behalf of a third-party, and therefore, its conduct is not subject to the CCAA.

The primary factual basis for the plaintiffs' contention that Palisades was a "consumer collection agency," and not a "creditor," is that, at the time it filed suit against the plaintiffs in state court on the defaulted debt, it was licensed in Connecticut as a consumer collection agency.[2]

---

[2] Palisades asserts that for at least seven plaintiffs, it filed suit in state court prior to obtaining a license as a collection agency. Palisades further argues that there is no evidence in the record that Palisades purchased any of the accounts while it had its collection agency license.

Pl. Exs. 4 & 5. The plaintiffs contend that, because Palisades held itself out as a "consumer collection agency" by virtue of its license, it violated federal and state law when it attempted to collect on the purchased defaulted debt. Palisades does not dispute that it sought and received collection agency licenses for two of its offices from the State of Connecticut. It contends, however, that it incorrectly believed it was required to have a collection agency license in order to collect on its own behalf. Palisades later cancelled those licenses when it determined that it was a "creditor" under Connecticut law and therefore was not required to be licensed as a collection agency when it was collecting debts on its own behalf. Palisades argues that it never acted in the capacity of a collection agency, despite its licensing, and, therefore, as a "creditor" it was permitted to collect on the debts by filing suit against the debtors in state court.

Section 36a-800 defines "consumer collection agency," in pertinent part, as "any person *engaged in the business of* collecting or receiving for payment *for others* of any account, bill or other indebtedness from a consumer debtor . . . including any person who, by any device, subterfuge or pretense, makes a pretended purchase or takes a pretended assignment of accounts from any other person or municipality of such indebtedness for the purpose of evading the provisions of sections 36a-800 to 36a-810, inclusive." (emphasis added). Any person not covered under the definition of "consumer collection agency" is a "creditor" as defined by section 36a-645, which states a "creditor" is "(A) any person to whom a debt is owed by a consumer debtor and such debt results from a transaction occurring in the ordinary course of such

---

Indeed, the only evidence of when Palisades purchased the accounts are two letters from Palisades to Miriam Hernandez dated December 30, 2005 and January 5, 2006, notifying her that Palisades had purchased her account from Bank/First USA. Pl. Exs. 20 & 21. Those letters originated from Palisades's Englewood Cliffs, NJ office, whose collection agency license did not take effect until February 7, 2006.

person's business, or (B) *any person to whom such debt is assigned*." (emphasis added). The definition of "creditor" also explicitly excludes "a consumer collection agency, as defined in section 36a-800." Conn. Gen. Stat. § 36a-345. Section 36a-805(3) prohibits consumer collection agencies from "purchas[ing] or receiv[ing] assignments of claims for the purpose of collection or institut[ing] suit thereon in any court."

The issue that I must resolve is whether, under Connecticut law, Palisades is properly considered a "consumer collection agency" because it was licensed as a collection agency, or a "creditor" because it was only collecting on accounts on its own behalf. The matter is one of statutory interpretation. According the plaintiffs' interpretation of the relevant statutes, Connecticut law would prevent entities from being both a debt-buyer and a licensed collection agency, regardless of whether the entity was licensed in Connecticut and regardless of whether that entity actually operated as a collection agency either in Connecticut or another state. Palisades contends, on the other hand, that it is the entity's *actions* that are relevant; that is, whether the CCAA is applicable to a particular entity should be determined on a case-by-case basis and must turn on whether the entity is actually engaging in the business of collecting debts on behalf of a third-party, not only whether the entity holds a consumer collection agency license.

The parties have not pointed the court to, nor has my own research revealed, any Connecticut Department of Banking regulation that sheds light on this question of interpretation. Connecticut does not regulate the activities of debt-buyers to the same extent as consumer collection agencies. The pertinent provision of the statute is primarily concerned with preventing original creditors and debt-buyers and their retained consumer collection agencies from engaging in legal subterfuge in order to evade the prohibitions of sections 36a-800 *et seq*. That provision

provides that "[n]o consumer collection agencies shall . . . purchase or receive assignments of claims for the purpose of collection or institute suit thereon in any court." Conn. Gen. Stat. § 36a-805(3). That provision, however, must be read in the context of both the definition of "consumer collection agency" and "creditor." "Creditor" includes "any person to whom [consumer] debt is assigned," i.e., a debt-buyer. Conn. Gen. Stat. § 36a-645. The definition of "creditor" specifically excludes "consumer collection agencies," as defined under section 36a-800. Conn. Gen. Stat. § 36a-645. "Consumer collection agency" includes not only "any person engaged in the business of collecting or receiving for payment for others of any account, bill or other indebtedness from a consumer debtor," but also includes "any person who, by any device, subterfuge or pretense, makes a pretended purchase or takes a pretended assignment of accounts from any other person or municipality of such indebtedness for the purpose of evading the provisions of sections 36a-800 to 36a-810, inclusive." Conn. Gen. Stat. § 36a-800(1).

To start, original creditors and debt-buyers, i.e., those defined as "creditors" under section 36a-645, are not prohibited from collecting on a defaulted debt by filing suit against the consumer debtor. However, those original creditors and debt-buyers may choose not to take full advantage of the broader scope of their legal authority to collect on defaulted debts on their own behalf. Often those original creditors and debt-buyers retain consumer collection agencies to collect on their defaulted accounts. Without addressing why the Connecticut legislature felt compelled to regulate consumer collection agencies more closely, it is clear that it believed that the conduct of collection agencies merited more rigorous oversight, as evidenced by the comparative dearth of regulations restricting the debt-collection activities of original creditors and debt-buyers. Based on the statutory language of section 36a-800, the legislature was

obviously concerned with preventing original creditors and debt-buyers from engaging in legal transfers of debt with their collection agencies for the sole purpose of giving the collection agencies more legal latitude to collect on the debts, while those original creditors and debt-buyers still retained some beneficial interest in those debts.

That concern does not appear to be an issue in this case. Here, Palisades, though temporarily licensed as a consumer collection agency, was not collecting on behalf of others when it filed suit against the plaintiffs in state court to collect on its defaulted accounts. Palisades purchased the defaulted accounts outright from the original creditors and sought to collect on those accounts on its own behalf – the very definition of "creditor" under Connecticut law. The plaintiffs do not allege, nor is there any evidence in the record to suggest, that Palisades purchased the debt from an original creditor for the purpose of evading Connecticut regulations restricting the debt-collection activities of consumer collection agencies. The plaintiffs have not set forth any evidence disputing the sworn affidavit of Monica Bey, a Palisades representative, that Palisades purchased the defaulted accounts outright from the original creditors and that it owes no fiduciary duty or financial obligation to any original creditor.

The plaintiffs further contend that, because Palisades collects on behalf of third-parties in other states, Palisades is necessarily a consumer collection agency under Connecticut law.[3] That interpretation is too far-reaching. Plaintiffs' interpretation would significantly restrict the ability of some debt-buyers to utilize all legal avenues otherwise available to "creditors" to collect debts

---

[3] As evidence that Palisades acts as a consumer collection agency in other states, the plaintiffs cite to *Kujawa v. Palisades Collection, L.L.C.*, 2008 WL 1925063 (E.D. Mich. 2008). Under the facts presented in *Kujawa*, Palisades was collecting on debt held by Providian National Bank. *Id.* at *1.

on their own behalf.  Nothing in the statute indicates that the legislature sought to exclude entities acting as consumer collection agencies in other states from suing as creditors in Connecticut, provided they truly own the debt sued upon.  In this case, it is undisputed that Palisades was not collecting on behalf of others, despite holding a Connecticut consumer collection agency license.  Significantly, the language of section 36a-800 defines consumer collection agency as any person "engaged in the business" of collecting on defaulted accounts "for others."  The relevant inquiry is not the status of the entity, i.e., whether it holds a consumer collection agency license, but rather the entity's actions, i.e., whether it was engaged in the business of collecting debts on behalf of others.  Palisades' conduct in this case does not bring it within the scope of the CCAA, regardless of what type of business it may engage in elsewhere and in other cases.  Based on the undisputed facts presented here, because Palisades was collecting debts on its own behalf, I conclude that Palisades was a "creditor" and, thus, not subject to the CCAA's prohibitions.  Because the plaintiffs' FDCPA claim was predicated solely on a CCAA violation, in the absence of any such violation, summary judgment is granted in favor of Palisades' on the plaintiffs' FDCPA claim.

        3.    *CUTPA Claim*

In Count Two of the Amended Complaint, the plaintiffs allege a Connecticut Unfair Trade Practices Act ("CUTPA") claim that is predicated on violations of the Creditors' Collection Practices Act ("CCPA") and the CCAA.  As discussed above, because Palisades did not violate the CCAA and, in turn, did not violate FDCPA, the plaintiffs' CUTPA claim premised on such violation cannot survive either.  In addition, the plaintiffs have withdrawn any claim based on the CCPA.  *See* Plaintiffs' Responses to Defendant's Second Set of

Interrogatories, at ¶¶ 12-14. In the absence of any legal basis for a CUTPA claim, summary judgment for Palisades is granted on Count Two.

    C.    Motion for Judgment on the Pleadings

In light of my above rulings, it is not necessary to address the merits of Palisades' motion for judgment on the pleadings. Therefore, that motion is denied as moot.

**III.    Conclusion**

For the foregoing reasons, Palisades' Cross-Motion for Summary Judgment (**doc. #100**) is **GRANTED**, the plaintiffs' Motion for Summary Judgment (**doc. #98**) is **DENIED**, Palisades' Motion for Judgment on the Pleadings (**doc. #45**) is **DENIED as moot**. The clerk is directed to close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 29th day of September 2008.

                                                    /s/ Stefan R. Underhill
                                                      Stefan R. Underhill
                                                      United States District Judge